***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Deluca.
 *********** EVIDENTIARY MATTERS
On November 12, 2009, defendants filed a motion to admit additional evidence. On November 25, 2009, Commissioner Bernadine S. Ballance held defendants' motion to admit *Page 2 
additional evidence in abeyance. In the discretion of the Full Commission defendants' motion to admit additional evidence is DENIED. N.C.I.C. Rule 701(6).
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At all relevant times, the parties were properly before the Industrial Commission, the Commission has jurisdiction of the parties and of the subject matter, and the parties were subject to and were bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the employer and the employee on or about May 21, 2001, the date of the admittedly compensable injury by accident to plaintiff's low back, left hip, and left leg.
3. Plaintiff's average weekly wage was $692.00, yielding a compensation rate of $461.36.
4. Plaintiff has been totally disabled and paid indemnity benefits from April 28, 2004 through October 25, 2004, and from October 13, 2008, through the present and continuing.
5. At the hearing before the Deputy Commissioner the parties stipulated to the following:
 a. Stipulated 1: Pre Trial Agreement
 b. Stipulated 2: I.C. Filings and Orders
 c. Stipulated 3: Job Search May 27, 2005 to May 30, 2008
 d. Stipulated 4: Job Search October 20, 2008 to February 20, 2009 *Page 3 
 e. Stipulated 5: Defendants' Response to Plaintiff's Motion dated July 14, 2006 and Plaintiff's Motion to Reinstate dated August 10, 2006
 f. Stipulated 6: Plaintiff's May 1, 2008 Motion
 g. Stipulated 7: Defendants' Response to Plaintiff's May 1, 2008 Motion
 h. Stipulated 8: Response to Plaintiff's May 1, 2008 Motion, Response to Defendants' Response May 26, 2008, Memorandum from Executive Secretary's Office
 i. Stipulated 9: Plaintiff's Motion to Reinstate October 21, 2008
 j. Stipulated 10: Order December 4, 2008 and Appeal Documents
 k. Stipulated 11: Centerpoint Job Description
 l. Stipulated 12: Gould Lamb MSA
 m. Stipulated 13: ESC File
 n. Stipulated 14: Resume
 o. Stipulated 15: Medical Bill Chart
 p. Stipulated 16: CD Surveillance
 q. Stipulated 17: Reports on Surveillance.
6. Plaintiff contends the issues to be heard are:
 a. Whether plaintiff is entitled to temporary total disability benefits for the period from June 9, 2006 until October 13, 2008, during which period she was complying with vocational rehabilitation;
 b. Whether defendants must comply with the Opinion and Award of the Full Commission and pay for the medical treatment for her admittedly compensable back injury; *Page 4 
 c. Whether plaintiff is entitled to a treating physician of her choice; and
 d. Whether defendants have to show cause why they should not be held in contempt for failure to comply with the Opinion and Award of the Full Commission and provide medical treatment for her admittedly compensable back injury.
7. Defendants contend the issues to be heard are:
 a. Whether plaintiff has reached maximum medical improvement from her compensable injury;
 b. Whether plaintiff is disabled within the meaning of N.C. Gen. Stat. § 97-2(9);
 c. Whether plaintiff is in compliance with vocational rehabilitation; and
 d. Whether the Executive Secretary erred in reinstating plaintiff's temporary total disability benefits effective October 13, 2008.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on January 24, 1949 and is sixty-one years old. She earned a Bachelor's Degree from Shaw University in 1970 and a Masters of Education from Winthrop University in 1976.
2. Plaintiff has an extensive work history as a teacher and social worker, having worked in an elementary school as early as the 1970s. Plaintiff also worked for the North Carolina Department of Health and Human Services in Winston-Salem, and during that *Page 5 
employment she received additional post-graduate training through East Carolina University, Appalachian State University, and the University of North Carolina at Chapel Hill. Plaintiff was required to take a number of exams on various topics, including medical issues, educational research, and mental health.
3. Plaintiff resigned from her position with the North Carolina Department of Health and Human Services due to her mother's passing. Shortly thereafter she began work as a substitute teacher in the school system where she worked with middle and junior high school students. Plaintiff was hired by defendant-employer as a clinical therapist in September 2000. She was a Human Services Clinician III. In this position, she worked with families of juvenile delinquents in performing case management services. She often was responsible for transporting these juvenile delinquents in her company car and offered counseling services to them.
4. On or about May 21, 2001, plaintiff sustained an admittedly compensable injury to her back while employed by defendant-employer.
5. On October 25, 2004, plaintiff's former attorney Roderick T. McIver informed Carl Carter at Southern Rehabilitation Network, Inc. that plaintiff would no longer participate in vocational rehabilitation. Plaintiff subsequently discharged that particular attorney and hired her present counsel, who notified the Commission on or about June 9, 2006, that Plaintiff was ready and willing to cooperate with vocational rehabilitation.
6. Pursuant to a June 2, 2006 Full Commission Opinion and Award, plaintiff's temporary total disability benefits were suspended for noncompliance with vocational rehabilitation effective August 22, 2003 through April 28, 2004, and from October 25, 2004 and continuing until plaintiff shows that she is compliant with vocational rehabilitation. Plaintiff appealed that decision to the Court of Appeals, and filed a Petition for Discretionary Review *Page 6 
with the Supreme Court. Ultimately the June 2, 2006 Full Commission Opinion and Award was affirmed. The June 2, 2006 Full Commission Opinion and Award is incorporated by reference into this Opinion and Award. The Full Commission Opinion and Award ordered defendants to reinstate temporary total disability benefits when plaintiff demonstrates that she is compliant with vocational rehabilitation.
7. While plaintiff's appeal before the Court of Appeals was pending, Plaintiff moved that the Commission reinstate her temporary total disability benefits, alleging that she was now compliant with vocational rehabilitation. The Commission refused to grant the motion, as it lacked jurisdiction to do so while the matter was on appeal.
8. Plaintiff began vocational rehabilitation in June 2006, and worked with Ms. Sonya Ellington, a vocational counselor for approximately 20 months, through February 2008. During that time Ms. Ellington met with plaintiff and plaintiff's attorney, Ms. Sumner, on a weekly or biweekly basis, always at plaintiff's counsel's office. Ms. Ellington provided job leads to Plaintiff on a weekly basis, and Plaintiff was required to keep a job search log. Ms. Ellington indicated Plaintiff presented to every meeting with a cane, and specifically requested that the use of the cane be included in her vocational plan. According to Ms. Ellington, Plaintiff kept her appointments relatively faithfully, and provided documentation indicating that she was looking for work. Ms. Ellington's company has a policy against calling potential employers to follow up on alleged applications, and thus Ms. Ellington did not undertake to do that in this case.
9. Plaintiff provided handwritten notes of her job search and testified that she contacted more than 300 employers. However, it appears from Plaintiff's submission that she sent out exactly one resume per week by mail without a cover letter and did not follow up on the *Page 7 
submission. After originally testifying that the job search documents detailed her efforts in full, Plaintiff amended her testimony and indicated that there were additional notes she made of telephonic follow ups to her resume submissions, but that they were not included in the materials she submitted. Plaintiff claimed she did not know that she was supposed include them.
10. Plaintiff called the city of Winston-Salem each week. The City maintains a telephonic message that lists potential jobs. Plaintiff testified there are 18-20 listings every week. Although plaintiff called every week, she has not applied for any of the jobs that have been offered through that service, asserting that none of the jobs were appropriate for her.
11. Plaintiff listed a number of medications she is taking for a variety of problems, including back pain, high blood pressure, and depression. Plaintiff contended these medications were started by Dr. O'Keefe, although refills have been allowed by Dr. Copper. Plaintiff described the side effects from the medication, including but not necessarily limited to, lethargy and sleepiness. She also indicated she believes she has some memory loss, but was unable to quantify such loss with any specificity. 12. Plaintiff testified that she has more problems in the morning, and is then able to move around better in the afternoon. Plaintiff described this as a process by which her joints loosen up after she has been moving around, leaving her most stiff in the morning after she has been sleeping. She indicated she always had her vocational rehabilitation meetings in the morning, and as such was sleepy during those meetings. Plaintiff testified that she rarely leaves her house during the morning and does her grocery shopping in the afternoon. Plaintiff acknowledged that she does not use her cane while she is grocery shopping. She also indicated she goes to church at least three weeks out of the month.
13. Despite her claim that she has difficulty functioning during the morning, plaintiff *Page 8 
never requested that her vocational rehabilitation meetings be moved to the afternoon, even though she had to drive to get to the meetings.
14. According to Ms. Ellington, plaintiff put up barriers to the vocational rehabilitation process. Although she attended appointments, plaintiff had a variety of excuses for why she did not follow through with various suggestions made by Ms. Ellington. She indicated sometimes she did not have stamps to mail résumés. She indicated she had no computer skills, and thus could not search for work over the internet. When Ms. Ellington suggested that plaintiff utilize community resources such as the library, plaintiff indicated she did not have money for gas to get there. At one point plaintiff contended she did not have appropriate clothing for interviews, but refused to meet Ms. Ellington at Goodwill to participate in a program designed to assist individuals in that circumstance. Ms. Ellington felt that plaintiff relied on her to lead the process, and that plaintiff was not developing job leads on her own.
15. On or about February 22, 2008, Ms. Ellington made the decision to end plaintiff's vocational rehabilitation, as she did not feel she could find work for plaintiff under the present circumstances. She felt that plaintiff's vocational rehabilitation efforts had plateaued, and that they were not effecting change in plaintiff's situation. Accordingly, Ms. Ellington has not met with plaintiff since February 2008. She indicated plaintiff has a number of skills that would be useful to an employer, including quite a bit of education and relevant work experience. Defendants have not provided vocational rehabilitation services to plaintiff since February 2008.
16. The greater weight of the evidence shows that plaintiff misrepresented her true physical capacity to Ms. Ellington, specifically with respect to her need to use a cane.
17. Plaintiff's mere attendance at meetings does not constitute full compliance with vocational rehabilitation. Although plaintiff claims to have done everything asked of her, based *Page 9 
on the greater weight of the credible evidence, she has failed to make a genuine effort to locate employment and to fully comply with vocational rehabilitation.
18. These findings are further supported by the surveillance materials and the testimony of Cheryl Hendrickson, the most recent private investigator to work plaintiff's case. Ms. Hendrickson conducted surveillance of plaintiff in February 2009. She also had the opportunity to observe plaintiff in the courtroom on the morning of the hearing before the Deputy Commissioner and indicated her demeanor at the hearing differed from her demeanor during surveillance. According to Ms. Hendrickson and the video documentation, plaintiff moved without any apparent difficulty on a shopping trip that lasted more than three hours and did not use the cane at all during that excursion.
19. The Full Commission finds based upon the greater weight of the evidence that plaintiff has failed to make a reasonable effort to fully comply with vocational rehabilitation efforts provided by defendants.
20. As defendants have not provided medical treatment for plaintiff to the extent contemplated in the prior June 2, 2006 Full Commission Opinion and Award, plaintiff has not reached maximum medical improvement.
21. Plaintiff has made a reasonable request that defendants assign a new authorized treating physician.
22. Plaintiff received some medical treatment from Downtown Health Plaza and Forsyth Medical Center which has not been paid for by defendants.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following: *Page 10 
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, supra.
2. As plaintiff has not put forth a reasonable effort to fully comply with vocational rehabilitation plaintiff is prohibited from receiving temporary total disability benefits through February 22, 2008, the day in which defendants were no longer providing vocational rehabilitation. N.C. Gen. Stat. § 97-25; Russell v. Lowes ProductDistribution, supra. However, as defendants have not provided vocational rehabilitation to plaintiff since February 22, 2008, plaintiff is entitled to temporary total disability benefits from February 23, 2008 and continuing at the rate of $461.36 per week. N.C. Gen. Stat. § 97-29.
3. Plaintiff is not at Maximum Medical Improvement. N.C. Gen. Stat. § 97-25. *Page 11 
4. Plaintiff is entitled to receive medical treatment for her compensable injury that is reasonably necessary to effect a cure or provide relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to a change of treating physician. N.C. Gen. Stat. § 97-25. Plaintiff shall designate a board-certified neurosurgeon or pain management physician of her choosing to provide medical treatment for her compensable injuries to her back, left hip, and left leg. Id.
6. Defendants shall provide to plaintiff and plaintiff shall fully comply with vocational rehabilitation. N.C. Gen. Stat. § 97-25.
7. Plaintiff's request for an order requiring defendants to appear and show cause why they should not be held in contempt is denied.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall reinstate plaintiff's temporary total disability compensation at the rate of $461.36, beginning February 23, 2008 and continuing until otherwise ordered by the Industrial Commission. The amounts that have accrued shall be paid in one lump sum.
2. An attorney's fee is approved for plaintiff's counsel in the amount of 25% of the accrued and ongoing temporary total disability benefits paid to plaintiff as a result of this Opinion and Award.
3. Plaintiff is not at maximum medical improvement. *Page 12 
4. Defendants shall be responsible for all medical expenses incurred or to be incurred for treatment of plaintiff's compensable injury which is reasonably necessary to effect a cure, provide relief or lessen the period of disability. Plaintiff shall designate a board-certified neurosurgeon or pain management physician of her choosing to provide medical treatment for her compensable injuries to her back, left hip, and left leg. All medical treatment prescribed by the approved treating physician shall be approved without delay.
5. Defendants shall provide to plaintiff and plaintiff shall fully comply with all vocational rehabilitation.
6. Plaintiff's request for an order requiring defendants to appear and show cause why they should not be held in contempt is denied.
7. Defendants shall pay the costs.
This the 28th day of April 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING: *Page 13 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 14